IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

SUSAN WILLIAMS        *

                     *

       Plaintiff,        *      **Case No.: 8:21-cv-02775-GLS**

                     *

v.                     *

                     *

DOLGENCORP, LLC      *

d/b/a DOLLAR GENERAL     *

                     *

       Defendant.       *

**Defendant's Motion for Summary Judgment and Motion in Limine's**
**<u>Table of Contents</u>**

I.     Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.    Argument for Summary Judgment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

III.   Argument for Motion in Limine to exclude Plaintiff's expert . . . . . . . . . . . . . . 11

IV.   Kevin Forehand's qualifications . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

V.    The factual basis for Kevin Forehand's opinions . . . . . . . . . . . . . . . . . . . . . . . 15

VI.   Applicable law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

VII.   Legal argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

VIII.   Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

DeCARO, DORAN,
SICILIANO, GALLAGHER,
& DeBLASIS, LLP
———
17251 MELFORD BOULEVARD
SUITE 200
BOWIE, MD 20715
TELEPHONE: (301) 352-4950
FAX: (301) 352-8691
———
3050 CHAIN BRIDGE ROAD
SUITE 300
FAIRFAX, VIRGINIA 22030
TELEPHONE: (703) 255-6667
FAX: (703) 299-8548

**DEFENDANT DOLGENCORP, LLC'S MOTION FOR SUMMARY JUDGMENT AND MOTION IN LIMINE TO EXCLUDE PLAINTIFF'S EXPERT KEVIN FOREHAND**

COMES NOW the Defendant, Dolgencorp, LLC d/b/a Dollar General, by and through its attorneys, Christopher R. Dunn and DeCaro, Doran, Siciliano, Gallagher & DeBlasis, LLP, and hereby submits this Motion for Summary Judgment and Motion in Limine to Exclude the Plaintiff's expert, Kevin Forehand, and in support thereof states as follows:

I.      **FACTS**

This case arises out of a trip and fall accident that occurred on February 4, 2019, at the Dollar General store located at 866 S. 5th Avenue, Denton, Maryland. Plaintiff testified that she entered the store at approximately 11:30 a.m. (*See* Plaintiff's deposition [hereinafter referred to as "PD"] p. 36, JA0003.) Plaintiff went to the Dollar General store with a friend by the name of Polly Styles. (PD p. 31, JA0002.) Plaintiff believes she shopped for approximately one hour. (PD p. 37, JA0004.) When Plaintiff got into the checkout line, the only person in front of her was her friend, Polly. (PD pp. 37-38, JA0004-JA0005) When the Plaintiff got into the checkout line behind her friend, she observed that there was a mat on the floor in front of the checkout register. (PD p. 37, JA0004.)[1]

At Plaintiff's deposition, the following colloquy took place:

A:      I saw the mat when I was in line to be rung up.

DeCARO, DORAN,
SICILIANO, GALLAGHER,
& DeBLASIS, LLP

17251 MELFORD BOULEVARD
SUITE 200
BOWIE, MD 20715
TELEPHONE: (301) 352-4950
FAX: (301) 352-8691

3050 CHAIN BRIDGE ROAD
SUITE 300
FAIRFAX, VIRGINIA 22030
TELEPHONE: (703) 255-6667
FAX: (703) 299-8548

---

[1]    Plaintiff's expert Kevin Forehand's opinion in this case is that Defendant Dollar General should not have had a mat for customers at the checkout register because it is unused in industry and customers would not expect or notice it causing a tripping hazard. Plaintiff admitted noticing the mat when she approached and then, knowingly, stood on the mat for 10 minutes before she fell.

Q: Okay. But when you first came in, you did not notice it?

A: It's not something I'd look for.

Q: I understand. Now, you said when you were in line, and you saw it. When you were in line, how many people were in front of you?

A: Just Polly.

Q: Did Polly have a shopping cart?

A: Yes.

Q: Did you see Polly have any problems when she pushed the shopping cart out?

A: I never paid attention, sir.

Q: Okay. When Polly was checking out, was she standing on the mat?

A: Everybody had to be. When you - - I mean, it right there by the register. You had to step on it to get rung up.

Q: How big was this mat?

A: Just guessing. Will say four by four, three by three.

(PD p. 37-38, JA0004-JA0005.)

Q: How do you know it was the rug that caused you to fall?

A: Because of the way I fell and the way I saw when I got - - fell to the floor (*sic*).

Q: What was it you saw when you fell to the floor?

* * *

A: I don't know. Just like when you trip over a rug or something, it like folds over or whatever.

Q: Okay. Was the mat flipped over or was it buckled under if you know?

DeCARO, DORAN,
SICILIANO, GALLAGHER,
& DeBLASIS, LLP
———
17251 MELFORD BOULEVARD
SUITE 200
BOWIE, MD 20715
TELEPHONE: (301) 352-4950
FAX: (301) 352-8691
———
3050 CHAIN BRIDGE ROAD
SUITE 300
FAIRFAX, VIRGINIA 22030
TELEPHONE: (703) 255-6667
FAX: (703) 299-8548

A:   I mean when you have any rug, even your house or anything, when you trip on it, it's like folds over a little bit. The whole rug don't fold over (*sic*), it just like the corner or whatever you hit it all folds over.

(PD p. 43, JA0006.)   Plaintiff testified that she stood on the rug in question for approximately ten minutes before she fell.  (PD p. 44, JA0007.)  Plaintiff did not notice anything unusual about the rug before she fell.  (PD p. 45, JA0008.)

Plaintiff testified that the photograph marked as Exhibit 3 in her deposition (JA0009), shows the checkout counter where she was standing when she fell, and the type of shopping cart, but no carpeted mat on the floor.  (PD p. 49, JA0010.) Plaintiff testified that as soon as she lifted her foot up to take her first step away from the register, her foot caught on something, and she fell.  (PD p. 53, JA0011.)

Plaintiff further testified that:

Q:   Do you know if your foot caused the rug to buckle?

A:   No, it couldn't have.

Q:   Why is that?

A:   It had to be the cart because - - other wise I would have tripped or something, but for me to fall sideways and to be out of the control, totally out of control, no, I didn't do anything or flip anything over.  My cart had to have done it.

Q:   You said that you saw the mat or the carpet when Polly was in the checkout. It wasn't flipped up at that time, correct?

A:   No.  Just like you showed me a while ago, just laying flat down.

Q:   And the whole time that you were checking out?

A:   On it.

DeCARO, DORAN,
SICILIANO, GALLAGHER,
& DeBLASIS, LLP
——
17251 MELFORD BOULEVARD
SUITE 200
BOWIE, MD 20715
TELEPHONE: (301) 352-4950
FAX: (301) 352-8691
——
3050 CHAIN BRIDGE ROAD
SUITE 300
FAIRFAX, VIRGINIA 22030
TELEPHONE: (703) 255-6667
FAX: (703) 299-8548

Q:     You didn't notice that it was buckled, correct?

A:     No, sir.

(PD pp. 58-59, JA0012-JA0013.)  Plaintiff testified that she is not aware of the identities of any persons that observed her fall.  (PD p. 61, JA0014.)

The Plaintiff took the deposition of Rosalind Jackson, who was the Dollar General corporate designee.  Ms. Jackson was the store manager of the Denton store on February 4, 2019 when the Plaintiff's fall occurred.  (*See* Rosalind Jackson's deposition [hereinafter "RJ"] p. 7, JA0016.)  Ms. Jackson observed the Plaintiff shopping in the store before she fell at the register.  (RJ p. 10, JA0017.)  Plaintiff fell while at the checkout register that Ms. Jackson was operating.  (RJ p. 11, JA0018.)  Ms. Jackson testified that "she just - - she had put her stuff on the register and she just was ringing her stuff and she fell. I don't know what had happened." (RJ p. 12, JA0019.)  Plaintiff informed Ms. Jackson immediately after the fall that she was all right.  (RJ. p. 13, JA0020.)  After the incident, Plaintiff provided Ms. Jackson her information and left the store under her own power.  (*Id* p. 13, JA0020.)  The mat that was on the floor in front of the register was a carpeted mat with a rubber back on it.  (RJ p. 14, JA0021.)  At Ms. Jackson's deposition, the following testimony occurred:

Q:     Did you have a chance to observe the rug or mat after Susan Williams fell?

A:     Yes, I walked around there and I didn't see nothing wrong, so that's why I never removed it.

Q:     When you were talking at the mat after you walked around it, was it buckled up?

A:     No, sir.

DeCARO, DORAN,
SICILIANO, GALLAGHER,
& DeBLASIS, LLP
———
17251 MELFORD BOULEVARD
SUITE 200
BOWIE, MD 20715
TELEPHONE: (301) 352-4950
FAX: (301) 352-8691
———
3050 CHAIN BRIDGE ROAD
SUITE 300
FAIRFAX, VIRGINIA 22030
TELEPHONE: (703) 255-6667
FAX: (703) 299-8548

Q:      Where was Ms. Williams when you first observed the mat?

A:      I don't understand what you mean.

Q:      Well, was Ms. Williams still on the floor or had she gotten up?

A:      No, she was up.  She was standing up.

Q:      Do you know if anybody had straightened the rug out after she had gotten up?

A:      No.

(RJ pp. 23-24, JA0022-JA0023.)

There is no evidence whatsoever of any actual or constructive notice of any dangerous condition that existed on the sales floor on the date in question.  No defect of the mat was observed by Plaintiff or Ms. Jackson.  No prior issues, complaints, or incidents were ever reported prior to Plaintiff's fall.  Absent spoliation, Plaintiff has no idea what caused her fall.

## II.     ARGUMENT FOR SUMMARY JUDGMENT

**The undisputed facts are legally insufficient to establish a *prima facie* case of negligence with regard to Plaintiff's claim.**

The Plaintiff is proceeding against the Defendant under a theory of negligence.  It is axiomatic that the Defendant's store is subject to liability for harm caused to the Plaintiff if, and only if:

1.      It knows, or by the exercise of reasonable care should have known, of a condition which, if known to it, it should realize involves a reasonable risk to the Plaintiff; and

2.      It should expect that the Plaintiff would not discover the condition; and

DeCARO, DORAN,
SICILIANO, GALLAGHER,
& DeBLASIS, LLP
———
17251 MELFORD BOULEVARD
SUITE 200
BOWIE, MD 20715
TELEPHONE: (301) 352-4950
FAX: (301) 352-8691
———
3050 CHAIN BRIDGE ROAD
SUITE 300
FAIRFAX, VIRGINIA 22030
TELEPHONE: (703) 255-6667
FAX: (703) 299-8548

3.    It failed to exercise reasonable care to protect the Plaintiff against the danger, provided it had knowledge or notice of this danger in sufficient time to give the store the opportunity to remove it or warn the Plaintiff of it.

Maans v. Giant of Maryland, 161 Md. App. 620, 626, 871 A.2d 627, 631 (2004); Deering Woods Condo. Assn. v. Spoon, 377 Md. 250, 263, 833 A.2d 17 (2003); Rawls v. Hochschild Kohn & Co., 207 Md. 113, A.2d 406, 407 (1955); Chalmers v. Greater Atlantic & Pacific Tea Co., 172 Md. 552, 192 A.419 (1937).

In other words, the condition complained of must pose an unreasonable risk to the invitee and must not be susceptible to recognition or discovery by the Plaintiff in order for the Defendant to be held liable for any harm resulting from the condition. The Defendant respectfully submits there is no liability when this Honorable Court analyzes the matter under the rules set forth above.

As this Honorable Court is well aware, "a store operator [...] is not an insurer of the invitee's safety. Maans, supra, at 627, 871 A.2d at 631. On the contrary, the legal assumption is that reasonable care was exercised by each party. Id. When one party charges another with negligence, it is that party's duty to prove such negligence by a preponderance of the evidence. Maans, Id. at 627, 871 A.2d at 631. Speculation or guesswork is not sufficient. Rawls v. Hochschild Kohn & Co., supra. It is respectfully submitted that a jury would have to speculate or guess as to the cause of liability under the evidence of the Plaintiff's case. Moreover, while the Defendant in this case is required to warn of patent or concealed dangers because of its knowledge, it has no duty or obligation to warn of such

DeCARO, DORAN,
SICILIANO, GALLAGHER,
& DeBLASIS, LLP

17251 MELFORD BOULEVARD
SUITE 200
BOWIE, MD 20715
TELEPHONE: (301) 352-4950
FAX: (301) 352-8691

3050 CHAIN BRIDGE ROAD
SUITE 300
FAIRFAX, VIRGINIA 22030
TELEPHONE: (703) 255-6667
FAX: (703) 299-8548

dangers which are obvious to those who come into the store or are as well known to those coming into the store to shop as the Defendant. The Defendant is entitled to assume that the Plaintiff will act reasonably and will possess the same perception of surrounding circumstances as a reasonably prudent person. Yaniger v. Calvert Building & Construction Co., 183 Md. 285, 37 A.2d 263, 264 (1944).

A review of the undisputed facts in this case indicates that the Plaintiff cannot show by any evidence that the injuries sustained were a direct consequence of negligence on the part of the Defendant herein, and, therefore, there is no rational ground upon which a verdict for the Plaintiff could be based. Thus, this Honorable Court must grant summary judgment in favor of the Defendant as a matter of law. Rawls, *supra*. A mere surmise that there may have been negligence will not justify this Honorable Court in permitting this case to be presented to the jury. Olney v. Carmichael, 202 Md. 226, 96 A.2d 37 (1953). The burden is clearly upon the customer to show that the proprietor created the dangerous condition or had actual or constructive knowledge of its existence for a reasonable period of time prior to the accident occurring. Lexington Market Authority v. Zappala, 233 Md. 444, 197 A.2d 147 (1964). There is no evidence in this case whatsoever to suggest that the Defendant created the negligent condition, nor is there any evidence to support a contention that the Defendant knew of the alleged dangerous condition prior to the time that this accident occurred. As was previously stated, no defect was observed with the mat in question by anyone. No prior issues, complaints, or incidents were ever reported prior to Plaintiff's fall.

DeCARO, DORAN,
SICILIANO, GALLAGHER,
& DeBLASIS, LLP

⎯⎯⎯

17251 MELFORD BOULEVARD
SUITE 200
BOWIE, MD 20715
TELEPHONE: (301) 352-4950
FAX: (301) 352-8691

⎯⎯⎯

3050 CHAIN BRIDGE ROAD
SUITE 300
FAIRFAX, VIRGINIA 22030
TELEPHONE: (703) 255-6667
FAX: (703) 299-8548

Therefore, the only theory the Plaintiff may possibly proceed under is constructive notice of the alleged dangerous condition.

In the case of <u>Joseph v. Bozzuto Management Co., et al.</u>, 173 Md. App. 305, 918 A.2d 1230 (2007), Judge Moylan speaking for the Court of Special Appeals directed:

> In order to sustain a cause of action against the appellees for breaching that duty, the appellant must prove not only that a dangerous condition existed but also that the appellee is 'had actual or constructive knowledge of the dangerous condition and that the knowledge was gained in sufficient time to give [them] the opportunity to remove it or warn the invitee' (citations omitted).

> 'The mere existence of a defect or danger is generally insufficient to establish liability unless it is shown to be of such character or of such duration that the jury may reasonably conclude that due care would have discovered it' (citation omitted).

*Id.* at page 4.

> **In terms of constructive knowledge, moreover, it is necessary for the plaintiff to show how long the dangerous condition has existed.** Appellant failed to produce any evidence that had [the store owner] made reasonable inspections prior to the accident it would have discovered the water on the floor in time to prevent the accident. For all that was shown by appellant, the water could have been spilled by a customer seconds before her fall. This is fatal to her argument that [the store owner] is liable because it breached its duty to make reasonable inspections.

> . . . The Maryland rule has two purposes: (1) it requires the demonstration of how long the dangerous condition existed prior to the accident so that the fact finder can decide whether the storekeeper would have discovered it if he or she had exercised ordinary care; and (2) it also shows that the intervals between inspections was at least as long as the time

DeCARO, DORAN,
SICILIANO, GALLAGHER,
& DeBLASIS, LLP

⸻

17251 MELFORD BOULEVARD
SUITE 200
BOWIE, MD 20715
TELEPHONE: (301) 352-4950
FAX: (301) 352-8691

⸻

3050 CHAIN BRIDGE ROAD
SUITE 300
FAIRFAX, VIRGINIA 22030
TELEPHONE: (703) 255-6667
FAX: (703) 299-8548

on the floor. **Thus, proof of time on the floor is relevant, not only as to notice but also as to the issue of what care was exercised. Without "time on the floor" evidence, the storekeeper would be potentially liable even though there was no way of telling whether there was anything [the store owner] could have done that would have avoided the injury.**

*Id*. at page 5.

The law in Maryland clearly and unequivocally states that, there must be either specific evidence that the defendant or its employee created the condition or actually observed the condition (actual notice), or there is some admissible evidence to establish that the specific hazardous condition remained on the floor for a substantial length of time before the incident (constructive notice) in order to establish a *prima facie* case of negligence and survive a motion for judgment. (*Id*.) Under a theory of constructive notice of a dangerous condition, the case of <u>Joseph v. Bozzuto</u> makes it absolutely imperative that a plaintiff customer establish evidence of "time of the floor" without speculation or conjecture. Should any other analysis be applied, the <u>Bozzuto</u> court made it clear the trial court would be imposing an impossible duty of clairvoyance on the defendant and its employees.

The Defendant would respectfully refer this Honorable Court to the instructive case of <u>Moulden v. Greenbelt Consumer Services, Inc.</u>, 293 Md. 229, 210 A.2d 724 (1965). In <u>Moulden</u>, the plaintiff brought an action against a grocery store proprietor for injuries sustained as a result of a slip and fall on a bean on the sales floor in the store. The trial court directed a verdict for the defendant because there was no notice, either actual or constructive,

DeCARO, DORAN,
SICILIANO, GALLAGHER,
& DeBLASIS, LLP

⎯⎯⎯

17251 MELFORD BOULEVARD
SUITE 200
BOWIE, MD 20715
TELEPHONE: (301) 352-4950
FAX: (301) 352-8691

⎯⎯⎯

3050 CHAIN BRIDGE ROAD
SUITE 300
FAIRFAX, VIRGINIA 22030
TELEPHONE: (703) 255-6667
FAX: (703) 299-8548

to the defendant of the alleged existence of the bean on the sales floor. The trial court was affirmed on appeal.

The <u>Moulden</u> court cited with approval language from a District of Columbia case which held:

> There being no evidence as to how long the bean had been on the floor, and it being possible that another customer may have dropped it just before [plaintiff] stepped on it, and any finding by a jury that the employees of the store saw the bean or should have seen it in time to remove it, or warn the [plaintiff], would rest on pure conjecture and not on reasonable inference. <u>Orum v. Safeway Store, Inc.</u>, (D.C. Mun. App.) 138 A.2d 665.

*Id*., 210 at 725.

In <u>Moulden</u>, the plaintiff fell as she approached the front of the store and slipped on something she believed to be a string bean. Although there was testimony in the <u>Moulden</u> case that the particular bean the plaintiff slipped on was "mashed, dry, green string bean, approximately 6 inches long," the Court of Appeals held that any finding by a jury that a store owner knew or should have known of the existence of this condition, without any testimony as to how long the bean had actually been on the floor, would have to be based on pure speculation. Rather, the Court concluded:

> The bean may have fallen from a grocery cart a few minutes before [plaintiff] walked up the aisle. She did not see the bean before she slipped ... however, the [store owner] is not an insurer, and we think it would be unreasonable to hold that it is his duty to conduct a continuous inspection tour of the store. Since there was no evidence of actual or constructive notice of a dangerous condition, the trial court's granting of

DeCARO, DORAN,
SICILIANO, GALLAGHER,
& DeBLASIS, LLP

———

17251 MELFORD BOULEVARD
SUITE 200
BOWIE, MD 20715
TELEPHONE: (301) 352-4950
FAX: (301) 352-8691

———

3050 CHAIN BRIDGE ROAD
SUITE 300
FAIRFAX, VIRGINIA 22030
TELEPHONE: (703) 255-6667
FAX: (703) 299-8548

> the motion for directed verdict in the [store owner's] favor
> was correct.

*Id.*, 210 at 726.

The instant case is very similar to the <u>Moulden</u> case. The Plaintiff has claimed that she tripped and fell on a carpeted mat, which she speculates that the mat may have been folded under. Assuming, *arguendo*, that Plaintiff did trip on the mat, there is no evidence in this case as to how the mat was folded under, or how long it remained folded under prior to the time this incident occurred. Plaintiff herself testified that when she observed the mat upon walking to the register, she did not observe any defect with the mat. As set forth more fully below, Plaintiff's expert claims that the mat should not be there because customers would not expect to see it there, is defeated by Plaintiff's own testimony. It is respectfully submitted that, for the reasons stated above, the Plaintiff cannot establish a *prima facie* case of negligence, and, therefore, this Honorable Court must grant the Defendant's Motion for summary judgment.

### III. ARGUMENT FOR MOTION IN LIMINE TO EXCLUDE PLAINTIFF'S EXPERT

Plaintiff has identified Kevin A. Forehand, DBA [hereinafter "Mr. Forehand"] as an expert witness in the field of "retail safety, standards, and procedures." Mr. Forehand has offered two opinions in this case:

> **Opinion Number 1:** Dollar General personnel did not act safely or responsibly by placing a mat at the front checkout and by failing to maintain a safe shopping environment at the time of the incident.

DeCARO, DORAN,
SICILIANO, GALLAGHER,
& DeBLASIS, LLP
——
17251 MELFORD BOULEVARD
SUITE 200
BOWIE, MD 20715
TELEPHONE: (301) 352-4950
FAX: (301) 352-8691
——
3050 CHAIN BRIDGE ROAD
SUITE 300
FAIRFAX, VIRGINIA 22030
TELEPHONE: (703) 255-6667
FAX: (703) 299-8548

**Opinion Number 2:** If Dollar General personnel had acted safely and responsibly by following Dollar General floor and safety policy, this incident very likely could have been avoided.

An in-depth review of Mr. Forehand's testimony reveals that both opinions are the same and both lack the requisite foundation as set forth in both Federal Rule of Evidence 702 and Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. at 589, 113 S.Ct. at 2795 (1993).

## IV.    KEVIN FOREHAND'S QUALIFICATIONS

Mr. Forehand has never been qualified by any court of law, state or federal. *(See* Mr. Forehand's deposition Marked as Exhibit 3, [hereinafter referred to as "KF"] p. 8, JA0025.) In fact, Mr. Forehand has never testified in any court of law as an expert or a lay witness. *(Id*.) Mr. Forehand obtained an Associate of Arts Degree from Thomas University. (KF p. 43, JA0037.) Mr. Forehand received a Bachelor of Science in Business Administration and a Master of Business Administration from Thomas University. (KF pp. 42-43, JA0036-JA0037.) Mr. Forehand received a Doctor of Business Administration - Management online, from Northcentral University. (KF p. 42, JA0036.) Mr. Forehand admits that his education has nothing to do with his qualifications or the basis for his expert opinions in this case (KF pp 42-43, JA0036-JA0037).

Mr. Forehand worked at Walmart from 1989 to 1995. (KF p. 22, JA0029.) The entire time Mr. Forehand was employed at Walmart, he never gave a deposition or completed a single incident report. (KF p. 114, JA0072.) After leaving Walmart 28 years ago, Mr. Forehand went to work for One Stop Music House, Inc., a record store where he worked

DeCARO, DORAN,
SICILIANO, GALLAGHER,
& DeBLASIS, LLP
———
17251 MELFORD BOULEVARD
SUITE 200
BOWIE, MD 20715
TELEPHONE: (301) 352-4950
FAX: (301) 352-8691
———
3050 CHAIN BRIDGE ROAD
SUITE 300
FAIRFAX, VIRGINIA 22030
TELEPHONE: (703) 255-6667
FAX: (703) 299-8548

from 1995 to 1996. (KF pp. 30-31, JA0030-JA0031.) Next, Mr. Forehand was employed by Sound FX, Inc., another music store from 1996 to 2006. [2] (KF p. 31, JA0031.) Mr. Forehand was then employed by Lake Okeechobee Re-Development, LLC, a company that manufactured and sold RVs from 2004 to 2008 (a two year overlap with Sound FX, Inc.). (KF pp. 31-32, JA0031-JA0032.) Mr. Forehand worked for Northwoods Investment Group from 2001 to 2010, where the company invested in small tracts of land for residential development. (KF pp. 32-33, JA0032-JA0033.) Mr. Forehand admitted that the last time he worked in retail was 18 years ago for Sound FX in 2006. (KF p. 33, JA0033.) Mr. Forehand has never written any safety or risk management protocols, other than while working at Sound FX. (KF p. 40, JA0034.) Mr. Forehand has never been retained by any retailer to consult on its safety or risk management policies or procedures. (KF p. 41, JA0035.) Mr. Forehand admitted none of the Committee Memberships or the published research listed on his CV have anything to do with his qualifications or opinions in this case. (KF pp. 43-44, JA0037-JA0038.)

At Mr. Forehand's deposition, the following testimony occurred:

Q:      So you are saying you are being offered as an expert in the field of retail store operations, safety, risk management and standard of care?

A:      Those are the areas that I speak to and I address.

Q:      What makes you an expert in - - I'm going to go through them one by one - - retail operations?

DeCARO, DORAN,
SICILIANO, GALLAGHER,
& DeBLASIS, LLP

17251 MELFORD BOULEVARD
SUITE 200
BOWIE, MD 20715
TELEPHONE: (301) 352-4950
FAX: (301) 352-8691

3050 CHAIN BRIDGE ROAD
SUITE 300
FAIRFAX, VIRGINIA 22030
TELEPHONE: (703) 255-6667
FAX: (703) 299-8548

---

2

Mr. Forehand admitted that both records stores where he worked from 1995 to 2006 did not have floor mats as the stores were carpeted.

A:    In my opinion, my retail experience. That's what I lean upon.

Q:    Which is six years at Walmart and then the music store for ten years, correct?

A:    Yes.

Q:    And there is no other retail experience that you are referring to when you say that's what qualifies you?

A:    Correct.

(KF pp 46-47, JA0039-JA0040.)   Mr. Forehand has no scientific, technical or other specialized knowledge to assist the jury. Mr. Forehand holds no professional license. (KF p. 59, JA0045.)  Mr. Forehand admittedly has no specialized education, training or experience which qualifies him as an expert. (KF pp. 42-43, JA0036-JA0037.) He has had no education, nor has he ever taken a class or a course that was specifically related to safety. (*Id.*) Mr. Forehand has never been certified by the government as an expert in any field. (*Id.*) He has no background, education or experience in engineering, physics, human factors or biometrics (KF pp. 59-60, JA0045-JA0046.) The one and only time Mr. Forehand worked in retail with a tile floor where floor mats were used was over 28 years ago when he left Walmart. (KF p. 22, JA0029.)  Mr. Forehand has never published any peer-reviewed article in the field of "retail safety, standards, and procedures." (KF pp. 43-44, JA0037-JA0038.)  Mr. Forehand admitted that none of the Committee Memberships or the published research listed on his CV have anything to do with his qualifications or opinions in this case. (*Id.*) Mr. Forehand is not a member, nor is he even familiar with the National Safety Council, National Fire and Protection Association, ASTM International, American National Standards Institute,

DeCARO, DORAN,
SICILIANO, GALLAGHER,
& DeBLASIS, LLP
———
17251 MELFORD BOULEVARD
SUITE 200
BOWIE, MD 20715
TELEPHONE: (301) 352-4950
FAX: (301) 352-8691
———
3050 CHAIN BRIDGE ROAD
SUITE 300
FAIRFAX, VIRGINIA 22030
TELEPHONE: (703) 255-6667
FAX: (703) 299-8548

National Institute for Occupational Health and Safety, Occupational Safety and Health Administration and International Property Maintenance Code. (KF pp. 50-53, JA0041, JA0042, JA0043, JA0043.) In fact, Mr. Forehand admitted that he is not a member of any association that in any way relates to safety, risk analysis, or property management for retailers. (KF p. 53, JA0043.)

## V.    THE FACTUAL BASIS FOR KEVIN FOREHAND'S OPINIONS

Mr. Foreland has reviewed Plaintiff's Complaint, a screen shot from the store video, Defendant's Answers to Interrogatories, Defendant's Response to Request for Production of Documents, two different specifications for floor mats, store incident report, Defendant's Floor Care Maintenance Guide and Employee Safety Handbook, 20 photographs, and the depositions of Plaintiff and Ms. Jackson, Defendant's corporate designee. (KF pp. 10-12, JA0026, JA0027, JA0028.)

Mr. Forehand has never been in the Dollar General store in question or inspected any Dollar General mat. (KF p. 70, JA0047.) He has never been in any Dollar General store in connection with this case, or any other case. (*Id.*) He has only been in a Dollar General store as a customer. (*Id.*) Mr. Forehand has never interviewed the Plaintiff, has not requested any additional materials, or requested to perform any additional investigation. (KF p. 71, JA0048.)

Mr. Forehand did not perform any testing or research on the Dollar General mats. (KF p. 74, JA0049.) The only dimensions that he's aware of is what the plaintiff testified to, which was approximately 3 ft. by 3 ft. (*Id.*) Mr. Forehand admitted in his deposition that he

DeCARO, DORAN,
SICILIANO, GALLAGHER,
& DeBLASIS, LLP

———

17251 MELFORD BOULEVARD
SUITE 200
BOWIE, MD 20715
TELEPHONE: (301) 352-4950
FAX: (301) 352-8691

———

3050 CHAIN BRIDGE ROAD
SUITE 300
FAIRFAX, VIRGINIA 22030
TELEPHONE: (703) 255-6667
FAX: (703) 299-8548

does not know what the mat was made of; he does not know how old the mat was, and he does not know if the mat had any defects. (KF p. 75, JA0050.) The only information Mr. Forehand had about the mat was what he read in Plaintiff's deposition when Plaintiff testified that there was "a mat located in the checkout area rolled up, caused (*sic*) her to trip and fall on her left side." (KF p. 84, JA0051.) Mr. Forehand went on to testify that Plaintiff admitted in her deposition that she never observed the mat rolled up, that she only assumed it was rolled up because she fell. (KF p. 85, JA0052.) Mr. Forehand has no other information concerning the condition of the mat at the time of the fall, other than Plaintiff's speculation. (*Id*.) Mr. Forehand admitted that no evidence exists that the mat was rolled up prior to Plaintiff's fall or defective in any manner. (KF pp. 86-87, JA0053-JA0054.) Rather, in explaining **his first opinion**, **Mr. Forehand testified that his only opinion concerning the mat is "that a mat should not be located in the customer checkout area, in the customer lane."** (KF p.89, JA0055 emphasis added.)

The glaring deficiency in Mr. Forehand's opinion is that, admittedly, he did not performed any research, survey any other retail establishment, or provide any factual or legal support of his opinions. When pressed to explain the basis for his opinion that a mat at the checkout register violates industry standards, Mr. Forehand testified that his opinion was based solely on his personal experience shopping in retail stores. Specifically, Mr. Forehand testified:

> Q: Give me the authority, not based on the stores you've been in, give me the authority that says you cannot have mats in the checkout aisle.

DeCARO, DORAN,
SICILIANO, GALLAGHER,
& DeBLASIS, LLP

———

17251 MELFORD BOULEVARD
SUITE 200
BOWIE, MD 20715
TELEPHONE: (301) 352-4950
FAX: (301) 352-8691

———

3050 CHAIN BRIDGE ROAD
SUITE 300
FAIRFAX, VIRGINIA 22030
TELEPHONE: (703) 255-6667
FAX: (703) 299-8548

A:      Okay.  So a customer -- I can't give you an authority that specifically says that, but I can tell you based on my experience, look at Walmart, look at Target, Kroger, et cetera, we can go down the list of major retailers, they do not place mats in the customer checkout lane.  The only mat in my experience that I've ever seen used in a major retail store is the anti-fatigue mat that the cashier, the employee, stands on.

(KF pp. 89-90, JA0055-JA0056.)

Q:      When have you ever done a survey, actively gone out to stores and looked at -- you said Target and you threw names out and you said "based on my experience."  When have you ever done a survey where you went into retail stores for this exact purpose?

A:      I never conducted a survey. It is based on my experience as a manager working at retail stores such as Walmart and also as a customer visiting these various type stores.

Q:      Yeah, but a customer makes you no different than me, no different than Angie and Tim.  And working in retail stores, you didn't have any mats in the record stores because it was carpeted floor. So you worked in Walmart 27 years ago and Walmart didn't have mats in the checkout lines?

A:      And they still do not today.  And according to the National Floor Safety Institute, mats, gratings -- I'm going to read this.  "Mats, gratings or other similar flooring are used wherever water or spills are likely."

Q:      You are reading from the NFSI?

A:      It's that checklist we talked about earlier.

Q:      That's not in your report.

A:      Well, I mentioned National Floor Safety Institute in the report, yes, and I talk about –

Q:      And you talk about slippery contaminants, food spillage, silverware, broken glass, loose carpets, and then it says mats, tiles and floorboards.

A:      Et cetera.

DeCARO, DORAN,
SICILIANO, GALLAGHER,
& DeBLASIS, LLP

17251 MELFORD BOULEVARD
SUITE 200
BOWIE, MD 20715
TELEPHONE: (301) 352-4950
FAX: (301) 352-8691

3050 CHAIN BRIDGE ROAD
SUITE 300
FAIRFAX, VIRGINIA 22030
TELEPHONE: (703) 255-6667
FAX: (703) 299-8548

Q:      National Floor Safety Institute, when has that ever been recognized as law in the State of Maryland?

A:      I have no knowledge of that.

Q:      Okay. And we've already discussed that's the one and only authority that you are referring to?

A:      Yes.

Q:      And it doesn't say that mats can't be used in a checkout aisle?

A:       No, it does not say they cannot be used.

(KF pp. 91-92, JA0057-JA0058.)

Q:      **So your whole opinion number one then is nothing more than mats shouldn't been placed at checkout aisles?**

A:      **A mat of any kind should not be in the customer checkout lane.**

(KF p. 93, JA0059. emphasis added.) Mr. Forehand went on to testify:

Q:      I know you have that opinion, but I'm still struggling with your authority other than the fact that you say so. I'm looking for some authority that it -- did it violate a federal law?

A:      Not to my knowledge.

Q:      State law?

A:      Not to my knowledge.

Q:      County?

A:      No.

Q:      Local ordinance?

A:      Not to my knowledge, no.

DeCARO, DORAN,
SICILIANO, GALLAGHER,
& DeBLASIS, LLP
_____

17251 MELFORD BOULEVARD
SUITE 200
BOWIE, MD 20715
TELEPHONE: (301) 352-4950
FAX: (301) 352-8691
_____

3050 CHAIN BRIDGE ROAD
SUITE 300
FAIRFAX, VIRGINIA 22030
TELEPHONE: (703) 255-6667
FAX: (703) 299-8548

(KF p. 95, JA0060.)

Mr. Forehand further admitted that he is not aware of any violation of industry standard set forth by National Safety Council, NFPA, ASTM, ANSI, National Institute of Occupational Health and Safety, or BOCA Code. (KF pp. 95-96, JA0060-JA0061.) Rather, Mr. Forehand testified that his opinions concerning industry standards are based solely on his personal experience while shopping in retail stores. (KF p. 99, JA0062.) When asked about those occasions

when he shops for personal reasons, the following testimony occurred:

> Q:  When you are in there to shop, you are not in there to do research for litigation (research) correct?
>
> A:  Correct. But I would have to say that I do notice things, right, because it is just my nature.

(KF p. 100, JA0063.)

> Q:  Have you ever seen any literature that specifically states that a retailer like Dollar General shouldn't put mats at the checkout aisle?
>
> A:  I've never seen any literature to that effect, no.  It's based on my experience.
>
> Q:  And you keep going back to that, your experience as a shopper.  And I understand that, but  that doesn't --
>
> A:  It's both my work experience when I worked  for Walmart and also as a shopper.
>
> Q:  Yeah, but you worked at Walmart 27 years ago.
>
> A:  That's true.
>
> Q:  And you haven't worked in a retail store that has any floor mats in it since then?

DeCARO, DORAN,
SICILIANO, GALLAGHER,
& DeBLASIS, LLP
———
17251 MELFORD BOULEVARD
SUITE 200
BOWIE, MD 20715
TELEPHONE: (301) 352-4950
FAX: (301) 352-8691
———
3050 CHAIN BRIDGE ROAD
SUITE 300
FAIRFAX, VIRGINIA 22030
TELEPHONE: (703) 255-6667
FAX: (703) 299-8548

A:    Yes.  But I was in a Walmart store approximately two weeks ago and there are no mats in the checkout lanes for customers to stand on or walk on.

* * *

Q:    Here's what I'm getting at, Kevin.  You are coming down to saying Dollar General having a floor mat at the checkout was a negligent mode of operation.  Is that a fair summary?

A:    Yes.  My opinion is it should not be there.

(KF pp. 101-102, JA0064-JA0065.)

Q:    Are you aware of anybody else who tripped and fell on the same mat that the plaintiff did?

A:    No.

Q:    Are you aware of anybody else that's ever tripped and fallen on a mat at the checkout lane at the store in question?

A:     No.

Q:    Are you aware of anybody else that has ever tripped and fell at any mat at the checkout counter at any Dollar General?

A:    No.

(KF pp. 103-104, JA0066-JA0067.)

Q:    So you don't know if the mat was rolled up. You've already said that you don't know if it was defective.  You don't know what caused her to trip other than what she says, that she assumes it was the mat?

A:    Correct.

Q:    And you are saying that a mat placed at a checkout counter, makes the retailer strictly liable is what you are saying, that they are liable no matter what because you don't believe they should have had them out there?

DeCARO, DORAN,
SICILIANO, GALLAGHER,
& DeBLASIS, LLP

———

17251 MELFORD BOULEVARD
SUITE 200
BOWIE, MD 20715
TELEPHONE: (301) 352-4950
FAX: (301) 352-8691

———

3050 CHAIN BRIDGE ROAD
SUITE 300
FAIRFAX, VIRGINIA 22030
TELEPHONE: (703) 255-6667
FAX: (703) 299-8548

A:	That is my opinion.  There should not be a mat in the customer checkout lane.
It creates a potential trip hazard.

(KF pp. 106-107, JA0068-JA0069.)

With regard to **Mr. Forehand's second opinion**, "If Dollar General personnel had

acted safely and responsibly by following Dollar General floor and safety policy, this incident

very likely could have been avoided." Mr. Forehand's sole basis for this opinion is that page

six  of the Dollar General Safety Handbook states: "During operating hours, do not leave

rolltainers, u-boats or ladders unattended. Maintain aisles free of debris and any other slip

or trip hazards at all times." (KF. p. 111, JA0070, *see also* p. 6 of Defendant's Safety

Handbook, JA0073.) Mr. Forehand believes that because Plaintiff fell, even though Plaintiff

does not know what caused her to fall, the mat was a tripping hazard.  Mr. Forehand asserts

that simply because Plaintiff fell, the floor mat must have been a tripping hazard.  He then

takes another illogical leap to claim if, in fact, the mat was a tripping hazard, it therefore

violates their own policies. [3]

Specifically, Mr. Forehand testified:

Q:	You are talking about where it says "maintain aisles free of debris and slip
and trip hazards at all times"?

A:	Yes.

Q:	Well, how did they violate that?

DeCARO, DORAN,
SICILIANO, GALLAGHER,
& DeBLASIS, LLP

———

17251 MELFORD BOULEVARD
SUITE 200
BOWIE, MD 20715
TELEPHONE: (301) 352-4950
FAX: (301) 352-8691

———

3050 CHAIN BRIDGE ROAD
SUITE 300
FAIRFAX, VIRGINIA 22030
TELEPHONE: (703) 255-6667
FAX: (703) 299-8548

[3]	Maryland courts have ruled that customs and practices of a party as distinguished from general customs
and practices is inadmissible since it is not helpful in determination of what constitutes reasonable care.
Western M.R. Co. v. Griffys, 253 Md. 643, 253 A2d 889 (1968).

A:    Because my opinion is that the mat in the checkout lane, which is also an aisle, the mat created a trip hazard.  That's not common.

Q:    You are saying because she tripped, it created a trip hazard?

A:    I am saying that the mat created a trip hazard.

Q:    You are saying that only because a mat was there. Nothing to do with the make, manufacturer, size, weight, texture, material, because you don't know any of that, correct?

A:    It has nothing to do with that. My opinion is strictly based on, as we've discussed prior, that my opinion is that there should not be a mat in the checkout lane where customers walk up to the checkout and conduct their business there to purchase their goods.

(KF pp. 111-112, JA0070-JA0071.)


## VI.   APPLICABLE LAW

Federal Rule of Evidence 702 governs the admissibility of expert opinion testimony.

Rule 702 specifically states:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a)    the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b)    the testimony is based on sufficient facts or data;

(c)    the testimony is the product of reliable principles and methods; and

(d)    the expert has reliably applied the principles and methods to the facts of the case.

DeCARO, DORAN,
SICILIANO, GALLAGHER,
& DeBLASIS, LLP
————
17251 MELFORD BOULEVARD
SUITE 200
BOWIE, MD 20715
TELEPHONE: (301) 352-4950
FAX: (301) 352-8691
————
3050 CHAIN BRIDGE ROAD
SUITE 300
FAIRFAX, VIRGINIA 22030
TELEPHONE: (703) 255-6667
FAX: (703) 299-8548

Fed. R. Evid. 702.

In Daubert, the supreme court set forth a two part test that must be met in order for expert testimony to be properly admitted under Rule 702: the testimony must be both reliable and relevant. Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. at 589, 113 S.Ct. at 2795 (1993). ("Under the Rules the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable.") While Daubert dealt with "scientific" testimony, the supreme court in Kumho Tire Co. v. Carmichael, 526 U.S. 137 (1999), clarified that the trial court's "gatekeeping" obligation applies not only to scientific testimony, but to all expert testimony. In Westberry v. Gislaved Gummi AB, 178 F.3d 257 (4th Cir. 1999), the Fourth Circuit Court of Appeals examined the two prong test annunciated in Daubert.

The first prong of this inquiry necessitates an examination of whether the reasoning or methodology underlying the expert's proffered opinion is reliable – that is, whether it is supported by adequate validation to render it trustworthy. The second prong of the inquiry requires an analysis of whether the opinion is relevant to the facts at issue. Thus, an expert's testimony is admissible under Rule 702 if it "rests on a reliable foundation and is relevant." Westberry, 178 F.3d at 260 (internal citations omitted).

"The inquiry to be undertaken by the district court is 'a flexible one' focusing on the 'principles and methodology' employed by the expert, not the conclusions reached." Westberry, 178 F.3d at 261. However, "conclusions and methodology are not entirely distinct from one another." General Elec. Co. v. Joiner, 522 U.S. 136, 146, 118 S.Ct. 512, 519 (1997).

DeCARO, DORAN,
SICILIANO, GALLAGHER,
& DeBLASIS, LLP

———

17251 MELFORD BOULEVARD
SUITE 200
BOWIE, MD 20715
TELEPHONE: (301) 352-4950
FAX: (301) 352-8691

———

3050 CHAIN BRIDGE ROAD
SUITE 300
FAIRFAX, VIRGINIA 22030
TELEPHONE: (703) 255-6667
FAX: (703) 299-8548

"A district court considering the admissibility of expert testimony exercises a gatekeeping function to assess whether the proffered evidence is sufficiently reliable and relevant." Westberry, 178 F.3d at 261.

In determining whether the reliability of proffered testimony meets the first prong of the test, "the court has broad latitude to consider whatever factors bearing on validity that the court finds to be useful." (*Id.*) Factors that the court may consider include:

(1) Whether the reasoning or methodology underlying the expert's opinion has been or could be tested;

(2) Whether the theory or technique has been subjected to peer review and publication;

(3) Whether there is a known or potential rate of error of the method used or standards controlling the technique's operation; and

(4) The level of acceptance of the reasoning or methodology by the relevant professional community.

*See Id.*; Daubert, 509 U.S. at 593-94, 113 S. Ct. at 2797; Kumho, 526 U.S. at 149, 119 S.Ct. at 1175.

While the above factors are the ones most referenced by the federal courts, they are not the only factors to consider. The Advisory Committee has noted that courts both before and after Daubert have found other factors relevant in determining whether expert testimony is sufficiently reliable to be considered by the trier of fact. These factors include:

(1) Whether experts are "proposing to testify about matters growing naturally and directly out of research they have conducted independent of the litigation, or whether they have developed their opinions expressly for purposes of testifying." Daubert, 43 F.3d 1311, 1317 (9th Cir. 1995).

DeCARO, DORAN,
SICILIANO, GALLAGHER,
& DeBLASIS, LLP

———

17251 MELFORD BOULEVARD
SUITE 200
BOWIE, MD 20715
TELEPHONE: (301) 352-4950
FAX: (301) 352-8691

———

3050 CHAIN BRIDGE ROAD
SUITE 300
FAIRFAX, VIRGINIA 22030
TELEPHONE: (703) 255-6667
FAX: (703) 299-8548

(2)      Whether the expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion. *See* General Elec. Co. v. Joiner, 522 U.S. 136 [139 L. Ed. 2d 508], 146 (1997) (noting that in some cases a trial court "may conclude that there is simply too great an analytical gap between the data and the opinion proffered").

(3)      Whether the expert has adequately accounted for obvious alternative explanations. *See* Claar v. Burlington N.R.R., 29 F.3d 499 (9th Cir. 1994) (testimony excluded where the expert failed to consider other obvious causes for the plaintiffs condition). Compare Ambrosini v. Labarraque, 101 F.3d 129 (D.C. Cir.1996) (the possibility of some uneliminated causes presents a question of weight, so long as the most obvious causes have been considered and reasonably ruled out by the expert).

(4)      Whether the expert "is being as careful as he would be in his regular professional work outside his paid litigation consulting." Sheehan v. Daily Racing Form, Inc., 104 F.3d 940, 942 (7th Cir. 1997). *See* Kumho, [143 L. Ed. 2d 238,] 119 S.Ct. 1167, 1176 (1999) (Daubert requires the trial court to assure itself that the expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field").

(5)      Whether the field of expertise claimed by the expert is known to reach reliable results for the type of opinion the expert would give. *See* Kumho [143 L. Ed. 2d 238,] 119 S.Ct. 1167, 1175 (1999) (Daubert's general acceptance factor does not "help show that an expert's testimony is reliable where the discipline itself lacks reliability, as, for example, do theories grounded in any so-called generally accepted principles of astrology or necromancy."); Moore v. Ashland Chemical, Inc., 151 F.3d 269 (5th Cir. 1998) (en banc) (clinical doctor was properly precluded from testifying to the toxicological cause of the plaintiffs respiratory problem, where the opinion was not sufficiently grounded in scientific methodology); Sterling v.Velsicol Chem. Corp., 855 F.2d 1188 (6th Cir. 1988) (rejecting testimony based on "clinical ecology" as unfounded and unreliable).

(Fed. R. Evid. 702 Advisory Committee's Note.)

DeCARO, DORAN,
SICILIANO, GALLAGHER,
& DeBLASIS, LLP

⸻

17251 MELFORD BOULEVARD
SUITE 200
BOWIE, MD 20715
TELEPHONE: (301) 352-4950
FAX: (301) 352-8691

⸻

3050 CHAIN BRIDGE ROAD
SUITE 300
FAIRFAX, VIRGINIA 22030
TELEPHONE: (703) 255-6667
FAX: (703) 299-8548

Rule 702, "rejects the premise that an expert's testimony should be treated more permissively simply because it is outside the realm of science. An opinion from an expert who is not a scientist should receive the same degree of scrutiny for reliability as an opinion from an expert who purports to be a scientist."(Fed. R. Evid. 702 Advisory Committee's Note.) Specifically, "[i]t seems exactly backwards that experts who purport to rely on general principles and practical experience might escape screening by the district court simply by stating that their conclusions were not reached by any particular method or technique." Watkins v. Telsmith, Inc.,121 F.3d 984, 991 (5th Cir. 1997). "The trial courts' gatekeeping function requires more than simply 'taking the expert's word for it . . . [t]he more subjective and controversial the expert's inquiry, the more likely the testimony should be excluded as unreliable." (Fed. R. Evid. 702 Advisory Committee's Note. *See also* O'Conner v. Commonwealth Edison Co., 13 F.3d 1090 (7th Cir. 1994)) (expert testimony based on a completely subjective methodology held properly excluded).

In determining whether the proffered expert opinion meets the second prong of the test, that is, whether the evidence will be helpful to the trier of fact, the court must be mindful that expert evidence can be both "powerful and quite misleading" and "given the potential persuasiveness of expert testimony, proffered evidence that has a greater potential to mislead than to enlighten should be excluded." Westberry, 178 F.3d at 261. Further, the court recognizes:

> [T]hat in practice, a gatekeeping role for the judge, no matter how flexible, inevitably on occasion will prevent the jury from learning of authentic insights and innovations. That

DeCARO, DORAN,
SICILIANO, GALLAGHER,
& DeBLASIS, LLP

———

17251 MELFORD BOULEVARD
SUITE 200
BOWIE, MD 20715
TELEPHONE: (301) 352-4950
FAX: (301) 352-8691

———

3050 CHAIN BRIDGE ROAD
SUITE 300
FAIRFAX, VIRGINIA 22030
TELEPHONE: (703) 255-6667
FAX: (703) 299-8548

> nevertheless, is the balance that is struck by the Rules of Evidence designed not for the exhaustive search for cosmic understanding by for the particularized resolution of legal disputes.

United States v. Dorsey, 45 F.3d 809, 814 (4th Cir. 1995) (quoting another source).

"In determining whether a particular expert's testimony is sufficiently helpful to the trier of fact to warrant admission into trial, the district court should consider whether the testimony presented is simply reiterating facts already 'within the common knowledge' of the jurors;" something that can be done by the jury without the help from an expert. *Id*. at 814, 815 (*citing* U.S. v. Harris, 995 F.2d 532 (4th Cir.1993)). In addition, the proffered expert testimony must "go beyond mere speculation and conjecture to be of assistance to the trier of fact." Oglesby v. General Motors Corp., 190 F.3d 244 (4th Cir. 1999).

## VII. LEGAL ARGUMENT

### Mr. Forehand's Opinions Fail the Daubert Prongs of Reliability and Relevance

In order to satisfy both the reliability and relevance prongs of Daubert, Mr. Forehand's proffered opinions must be supported by an adequate factual basis which is then applied to accepted methods and reasoning. Here, Mr. Forehand not only lacks a sufficient factual basis, but he has not applied any methods and reasoning other than *ipsi dixit*. As stated above, Mr. Forehand has no scientific, technical, or other specialized knowledge to assist the jury. Mr. Forehand has never been qualified as an expert by any court of law, nor testified as an expert. (KF p. 8, JA0025.) Mr. Forehand has no specialized education, training, or experience which qualifies him as an expert. (KF pp. 42-43, JA0036-JA0037.)

DeCARO, DORAN,
SICILIANO, GALLAGHER,
& DeBLASIS, LLP

17251 MELFORD BOULEVARD
SUITE 200
BOWIE, MD 20715
TELEPHONE: (301) 352-4950
FAX: (301) 352-8691

3050 CHAIN BRIDGE ROAD
SUITE 300
FAIRFAX, VIRGINIA 22030
TELEPHONE: (703) 255-6667
FAX: (703) 299-8548

Mr. Forehand has never been retained by any retailer to consult on their safety or risk management policies or procedures. (KF p. 41, JA0035.) Mr. Forehand admitted that none of the Committee Memberships or the published research listed on his CV have anything to do with his qualifications or opinions in this case. (KF pp. 43-44, JA0037-JA0038.) Mr. Forehand has never published any peer-reviewed article in the field of "retail safety, standards, and procedures."(KF pp. 43-44, JA0037-JA0038.) Mr. Forehand admitted none of the Committee Memberships or the published research listed on his CV have anything to do with his qualifications or opinions in this case. (*Id.*) Mr. Forehand is not a member, nor is he even familiar with the National Safety Council, National Fire and Protection Association, ASTM International, American National Standards Institute, National Institute for Occupational Health and Safety, Occupational Safety and Health Administration and International Property Maintenance Code (KF pp. 50-53, JA0041, JA0042, JA0043, JA0044.) Mr. Forehand holds no professional license. (KF p. 59, JA0045.) He has had no education nor has he ever taken a class of a course that was specifically related to safety. (*Id.*)

Mr. Forehand's opinions are not the product of reliable principles and methods as required by both <u>Daubert</u> and FRE 702. As stated above, Mr. Forehand has never been to the Dollar General store in question, nor any other Dollar General store in connection with this case. He has never inspected, tested, measured, or weighed the mat in question. He has conducted no research or survey of other similar retail establishment.

While the Federal Rules of Evidence govern the admissibility of evidence in a diversity case, <u>Samuel v. Ford Motor Co.</u>, 112 F. Supp. 2d 460 (D. Md. 2000), Maryland

DeCARO, DORAN,
SICILIANO, GALLAGHER,
& DeBLASIS, LLP

———

17251 MELFORD BOULEVARD
SUITE 200
BOWIE, MD 20715
TELEPHONE: (301) 352-4950
FAX: (301) 352-8691

———

3050 CHAIN BRIDGE ROAD
SUITE 300
FAIRFAX, VIRGINIA 22030
TELEPHONE: (703) 255-6667
FAX: (703) 299-8548

courts apply a similar approach. <u>Carter v. Shoppers Food Warehouse MD Corp.</u>, 126 Md.App. 147, 727 A.2d 958 (1999). <u>Carter</u> has a very similar fact pattern to the instant case. Plaintiff tripped and fell on a floor mat. The plaintiff in <u>Carter</u> retained a professional engineer who did a cursory examination of a floor mat inside of the Shoppers Food Warehouse store. It was his opinion that the reason the plaintiff tripped and fell on the rubber mat was because it was too thin. During his inspection of the store and examination of the mat, the expert performed no scientific testing and did nothing more than measure the floor mat and take photographs of the same. The trial court granted the motion in limine and excluded the expert, finding that plaintiff's expert had an insufficient factual basis to support his opinions at trial. After granting the motion in limine, the trial court then granted summary judgment The Maryland Court of Special Appeals affirmed the exclusion of plaintiff's expert and held that the proffered testimony of a safety expert on a premise liability case was properly excluded when it was not supported by a sufficient basis. *See also* <u>Wood v. Toyota Motor Corp.</u>, 134 Md. App. 512, 760 A.2d 315 (2000) (expert properly excluded when the proffered testimony failed to pass standards similar to those enunciated in <u>Daubert</u>, and rejecting proffered testimony based upon nothing more than "because I say so" explanation).

The Court of Special Appeals explained their basis for excluding plaintiff's expert in <u>Carter</u> stating: "An expert's opinion 'has no probative force unless there is a sufficient basis upon which to support his conclusions." (134 Md. App at 156.) The court went on to explain:

DeCARO, DORAN,
SICILIANO, GALLAGHER,
& DeBLASIS, LLP

———

17251 MELFORD BOULEVARD
SUITE 200
BOWIE, MD 20715
TELEPHONE: (301) 352-4950
FAX: (301) 352-8691

———

3050 CHAIN BRIDGE ROAD
SUITE 300
FAIRFAX, VIRGINIA 22030
TELEPHONE: (703) 255-6667
FAX: (703) 299-8548

The trial court did not err in determining that Sober's [Plaintiff's expert] testimony would not assist the jury's understanding of a fact in issue because a juror's common knowledge sufficiently provides him or her the ability to comprehend a slip and fall on a carpet. Notably absent from Sober's opinion were both statutory guidelines requiring a certain weight or type carpet and scientific testing of the actual carpet at issue. Without such information, there was no foundation upon which to admit his testimony that the carpet at issue was inappropriate or dangerous. Keeping in mind that the court had wide discretion in making this determination, the trial court did not abuse this discretion by excluding Sober's testimony (134 Md. App at 158-9).

Mr. Forehand lacks the requisite scientific, technical, or other specialized knowledge to assist the trier of fact in the instant case. His opinions are not based on sufficient facts or data. Furthermore, his opinions are not the product of reliable principle and methods. Based upon the factors annunciated above, Mr. Forehand's opinions and conclusions, expressed in his report, as well as his deposition testimony, are both unreliable and flawed and have a greater potential to mislead than enlighten the jury. Accordingly, his testimony should be excluded.

## VIII.  <u>CONCLUSION</u>

It is respectfully submitted that this Honorable Court should grant the Defendant's Motion for Summary Judgment as the undisputed facts are legally insufficient to establish a *prima facie* case of negligence against the Defendant, Dolgencorp, LLC d/b/a Dollar General.

DeCARO, DORAN,
SICILIANO, GALLAGHER,
& DeBLASIS, LLP

——

17251 MELFORD BOULEVARD
SUITE 200
BOWIE, MD 20715
TELEPHONE: (301) 352-4950
FAX: (301) 352-8691

——

3050 CHAIN BRIDGE ROAD
SUITE 300
FAIRFAX, VIRGINIA 22030
TELEPHONE: (703) 255-6667
FAX: (703) 299-8548

Furthermore, it is respectfully submitted that this Honorable Court should grant the Defendant's Motion in Limine and exclude Mr. Forehand from testifying as an expert in this matter.

Respectfully submitted,

DeCARO, DORAN, SICILIANO,
GALLAGHER & DeBLASIS, LLP


*/s/Christopher R. Dunn*
Christopher R. Dunn, #05278
17251 Melford Boulevard, Suite 200
Bowie, Maryland 20715
(301) 352-4950
Fax - (301)352-8691
Cdunn@decarodoran.com
Counsel for Defendant

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 20th day of March, 2024, a copy of the foregoing Motion for Summary Judgment and Motion in Limine was electronically filed and forwarded to:

Timothy P. Leahy
Byrd & Byrd, LLC
14300 Gallant Fox Lane, Suite 120
Bowie, Maryland 20715
Tleahy@byrdandbyrd.com
Counsel for Plaintiff


*/s/Christopher R. Dunn*
Christopher R. Dunn,  #05278
Counsel for Defendant

DeCARO, DORAN,
SICILIANO, GALLAGHER,
& DeBLASIS, LLP
_____

17251 MELFORD BOULEVARD
SUITE 200
BOWIE, MD 20715
TELEPHONE: (301) 352-4950
FAX: (301) 352-8691
_____

3050 CHAIN BRIDGE ROAD
SUITE 300
FAIRFAX, VIRGINIA 22030
TELEPHONE: (703) 255-6667
FAX: (703) 299-8548